795 P.2d 298

Kenneth ALPERT and Flying H Trailer Ranch, Inc., for and on behalf of themselves and as representatives of all others similarly situated, Plaintiffs–Appellants, Cross–Respondents,

v.

BOISE WATER CORPORATION; Capital Securities Water Corporation, Intermountain Gas Company; City of Boise, Idaho; City of Meridian, Idaho; City of Eagle, Idaho; City of Kuna, Idaho; and City of Garden City, Idaho, Defendants–Respondents, Cross–Appellants.

ADA COUNTY HIGHWAY DISTRICT, a body politic, Plaintiff in Intervention,

v.

BOISE WATER CORPORATION; Capital Securities Water Corporation; Intermountain Gas Company; City of Boise, Idaho; City of Meridian, Idaho; City of Eagle, Idaho; City of Kuna, Idaho; and City of Garden City, Idaho, Defendants in Intervention–Respondents, Cross–Appellants.

Kenneth ALPERT and Flying H Trailer Ranch, Inc., for and on behalf of themselves and as representatives of all others similarly situated, Plaintiffs,

v.

BOISE WATER CORPORATION; Capital Securities Water Corporation, Intermountain Gas Company; City of Boise, Idaho; City of Meridian, Idaho; City of Eagle, Idaho; City of Kuna, Idaho; and City of Garden City, Idaho, Defendants–Respondents, Cross–Appellants.

ADA COUNTY HIGHWAY DISTRICT, a body politic, Plaintiff in Intervention, Appellant, Cross–Respondent,

v.

BOISE WATER CORPORATION; Capital Securities Water Corporation; Intermountain Gas Company; City of Boise, Idaho; City of Meridian, Idaho; City of Eagle, Idaho; City of Kuna, Idaho; and City of Garden City, Idaho, Defendants in Intervention–Respondents, Cross–Appellants.

Nos. 17625, 17629.

Supreme Court of Idaho.

June 14, 1990.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, for plaintiffs-appellants, cross-respondents Alpert and Flying H. Larry D. Ripley, argued.

Holland & Hart, Langroise, Sullivan, Boise, for plaintiff-appellant, cross-respondent Ada County Highway Dist. J. Frederick Mack, argued.

Kenneth Bergquist, Boise, for defendants-respondents, cross-appellants Boise Water Corp. and Capital Securities Water Corp.

Moffatt Thomas Barrett Rock & Fields, Boise, for defendant-respondent, cross-appellant Intermountain Gas Co. Morgan W. Richards, Jr., argued.

Clemons Cosho & Humphrey P.A., Boise, for defendant-respondent, cross-appellant Cities of Boise, Eagle, Kuna and Garden City. David M. Penny, argued.

Ambrose, Fitzgerald & Crookston, Meridian, for defendant-respondent, cross-appellant City of Meridian. Wayne Crookston, argued.

BOYLE, Justice.

In this utility franchise case we are called upon to determine the authority of cities to enter into utility franchise agreements and also to determine the validity of franchise fees paid to the cities by the utilities which are eventually passed on to the consumers and ratepayers.

The cities of Boise, Meridian, Eagle, Kuna and Garden Valley (hereafter Cities) entered into various gas and water utility franchise agreements with the Boise Water Corporation, Capital Securities Water Corporation and Intermountain Gas Company (hereafter Utilities). While only the City of Boise has franchise agreements with Boise Water Corporation and Capitol Securities Water Corporation, each of the cities of Boise, Eagle, Meridian, Kuna and Garden City have franchise agreements with Intermountain Gas Company. Each of the franchise agreements is embodied in a city ordinance adopted by the respective city governments. The franchise agreements provide that as consideration the cities will not engage in the business of the utility or enter into competition with the utilities. The franchise agreements provide a grant of authority giving the utilities the right and authority for a specific term of years to maintain a transmission and distribution system within the public areas of the city limits. Section 1 in the franchise agreement existing between the city of Boise and Intermountain Gas Company is illustrative of grants contained in all of the franchise agreements.

It is hereby granted to Intermountain Gas Company, a corporation, its successors (hereafter collectively referred to as "Grantee") a twenty (20) year extension to the right and authority to construct, install, maintain and operate the gas transmission and distributing system, including mains, pipes, conduits, services and other necessary structures and appliances appertaining in, under, upon, over, across and along the streets, alleys, bridges and public places within the present and future corporate limits of the City of Boise, Idaho (hereafter referred to as "City") for the furnishing, transmission, distribution and sales of gas, whether artificial, natural, mixed or otherwise, for heating, domestic, industrial and other purposes and for transmitting gas into, through and beyond said City.

Each of the franchise agreements provides that the utility shall pay to the city three percent of the gross annual receipts from all sales in the corporate limits as consideration for the franchise contract. The Idaho Public Utilities Commission allowed the utilities to meet their respective obligations to the cities by surcharging the utilities customers' accounts.

On March 12, 1987, appellants Kenneth Alpert and Flying H Trailer Ranch, Inc. filed a complaint in district court against the cities and also named as parties the utilities supplying gas and water service within the city boundaries. The complaint primarily alleged that the cities lacked authority to grant the franchises and impose the franchise fees. Ada County Highway District (ACHD) was allowed to intervene by order of the court. All parties subse-

quently filed motions for summary judgment. The district court heard arguments, issued a memorandum decision upholding the franchise agreements as valid and issued an order denying the motions for summary judgment by Alpert and Flying H and ACHD. The court also denied the request by Alpert and Flying H that it certify a class action.

## ISSUES ON APPEAL

The following issues are presented: 1) whether the plaintiffs have standing to bring this action; 2) whether this action was properly brought before the district court; 3) whether an antitrust action is presented; 4) whether the cities have the power and authority to contract with utilities; 5) whether the contracts awarding franchises between the utilities and the cities are valid and whether the franchise fee is proper consideration; and, 6) whether attorney fees should be awarded on appeal.

## I.

### *Standing*

The first issue presented is whether the plaintiffs Alpert and Flying H have standing to challenge the validity of the franchise fee. We answer this question in the affirmative and hold that these plaintiffs have standing to bring this action.

In *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989), we considered whether or not an individual ratepayer had standing to challenge an agreement entered into between the State of Idaho and Idaho Power Company. In *Miles,* the plaintiff was found to have standing as a customer and ratepayer to challenge the constitutionality of the legislation. In *Miles* we stated:

> The parties allegedly injured by the agreement are the ratepayers and customers of Idaho Power, and not the general populace of the state of Idaho. *This is more than a generalized grievance. It is a specialized and peculiar injury,* although it may affect a large class of individuals. The political process obvi-

ously will be more unkind to injured ratepayers seeking to change legislation affecting the whole state of Idaho than to injured citizens and taxpayers. When the impact of legislation is not felt by the entire populace, but only by a selected class of citizens, the standing doctrine should not be evoked to usurp the right to challenge the alleged denial of constitutional rights in a judicial forum.

Nevertheless, the respondents urge us to invoke the doctrine because of the large class of Idaho Power ratepayers. They argue that Miles, as only one of thousands of customers, suffered a generalized injury, which, when compared to the benefits the compromise afforded to all of the people of Idaho is de minimis and insubstantial. This may be true, but we fail to see how this factor requires a dismissal upon lack of standing. "To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. SCRAP*, 412 U.S. 669, 687–88, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). This statement is particularly true here. *There is no question that the agreement impacts Idaho Power ratepayers.* The State and Idaho Power, as part of their agreement, have pledged "actively and in good faith" to recommend and support the implementing legislation. Idaho Power ratepayers are therefore the group most adverse to the agreement, not Idaho Power or the State. Because of that fact, and *the fact that Miles challenges the implementing legislation as a ratepayer, and not as a taxpayer, we hold that Miles has standing to pursue his remedy in the courts.* (Emphasis added.)

*Id.*, 116 Idaho at 642, 778 P.2d at 764.

In the present case the plaintiffs Alpert and Flying H challenge the validity of the franchise fee characterizing it as a tax. It is undisputed that the franchise fees are ultimately paid by these plaintiffs and the other residents of the municipality using the utility. Although the plaintiffs are not parties to the franchise agreement, they

are directly affected by the agreement imposing the three percent fee and clearly have standing to bring this action. *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989).

## II.

### *Jurisdiction*

Several of the parties assert that only the Idaho Public Utilities Commission has jurisdiction to review and resolve the issues presented. We disagree and hold that the issues presented are best resolved by the courts rather than by an administrative agency.

■ The Idaho Public Utilities Commission exercises limited jurisdiction and has no authority other than that expressly granted to it by the legislature. *Washington Water Power Co. v. Kootenai*, 99 Idaho 875, 591 P.2d 122 (1979).

The Idaho Public Utilities Commission has no authority other than that given to it by the legislature. It exercises a limited jurisdiction and nothing is presumed in favor of its jurisdiction. *United States v. Utah Power & Light Co.*, 98 Idaho 665, 570 P.2d 1353 (1977); *Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.*, 98 Idaho 692, 571 P.2d 753 (1977); *Arrow Transp. Co. v. Idaho Pub. Utils. Comm'n*, 85 Idaho 307, 379 P.2d 422 (1963). As a general rule, administrative authorities are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the statutes reposing power in them and they cannot confer it upon themselves, although they may determine whether they have it. If the provisions of the statutes are not met and compliance is not had with the statutes, no jurisdiction exists.

*Id.*, 99 Idaho at 879, 591 P.2d at 126.

■ The public utilities law (Chapters 1–7 of Title 61, Idaho Code) establishes a comprehensive scheme for the regulation of investor-owned public utilities by the Idaho Public Utilities Commission. Idaho Code, tit. 61, chap. 5.[1]

Administrative authorities are tribunals of limited jurisdiction. Their jurisdiction is dependent entirely upon the provisions of the statutes reposing power in them; they cannot confer it upon themselves, although they may determine whether they have it. If the provisions of the statutes are not met and complied with, they have no jurisdiction.

*Arrow Transp. Co. v. Idaho Pub. Utils. Comm'n*, 85 Idaho 307, 313, 379 P.2d 422, 425 (1963), *quoting* 42 *Am.Jur.* 440, § 109.

As this Court stated in *Washington Water Power Co. v. Kootenai Environmental Alliance:*

There is no question that much of the work of the Commission, particularly in the areas of ratemaking, requires expertise, technical skill and constant attention.... Such was held to be a strong argument for the delegation of the legislative authority to a commission under statutes established by the legislature.

*Id.*, 99 Idaho at 882, 591 P.2d at 129.

In the complaint filed by plaintiffs the district court was requested to determine the validity of the franchise contracts between the utilities and the cities. The district court was also requested to determine the authority of the cities to grant a utility franchise, the validity of the franchise fee and the authority of the city to impose a franchise fee.

The subject matter of the complaint filed in district court clearly raises legal issues to be resolved by the courts rather than an administrative agency. The action filed in district court does not deal with the subject

---

1. More specifically, the authority granted the IPUC includes the power to investigate and fix rates and regulations, I.C. § 61–503; determine the reasonableness of rates, I.C. § 61–502; investigate proposed interstate rates, I.C. § 61–506; determine rules and regulations affecting the performance of public utilities, I.C. § 61–507; order improvements to utility facilities, I.C. § 61–508; investigate accidents occur-

ring on public utility property arising from its maintenance or operation, I.C. § 61–517; determine standards and practices for the measurement of quantity, quality or other conditions pertaining to the supply of a public utility product or service, I.C. § 61–520; ascertain the value of public utility property, I.C. § 61–523; and issue certificates of convenience and necessity, I.C. § 61–526.

matter traditionally regulated by public utility commissions and does not fall into a category of regulation which requires the technical expertise of a public utility commission. *Id.* Thus, we hold that this action was properly before the district court rather than the Idaho Public Utilities Commission.

### III.

#### *Antitrust Action*

■ Appellants Alpert and Flying H argue that the agreements between the cities and the utilities constitute an unlawful and unreasonable restraint of trade and that the district court erred in dismissing the antitrust claims.

In *Denman v. Idaho Falls,* 51 Idaho 118, 4 P.2d 361 (1931), this Court held that the Idaho antitrust laws do not apply to municipal corporations. In *Denman,* the Court was directly presented with the antitrust issue [2] and expressly held that the antitrust law did not apply to a municipal corporation. The Court stated:

> A careful examination of the act discloses that it was clearly the intention of the legislature that the use of the word "corporation" therein was to be limited to private corporations and not to include municipal corporations and numerous provisions contained therein negative the contention of appellant that it has application to and includes municipal corporations.... While such a statute may be applicable and enforceable against private corporations generally we know of no logical reason that could be urged sustaining the application of such a provision to a municipal corporation.

*Id.,* 51 Idaho at 121–22, 4 P.2d at 362; *see also Wilcox v. Idaho Falls,* 23 F.Supp. 626 (Idaho 1938).

Appellants Alpert and ACHD contend that there is no clearly expressed state policy which allows the defendant utilities and cities to engage in anticompetitive conduct. It is true that municipalities, unlike the state, are not necessarily shielded from liability under the antitrust laws unless the municipality acts pursuant to an affirmatively expressed "state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) *quoting Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978); *see also* McQuillin, *Municipal Corporations* § 34.23.05. However, the state of Idaho has specifically delegated and authorized its cities to provide utility services directly to its residents or to contract with other entities to provide the necessary utility services. Idaho Code § 50–344 grants to the cities the power to maintain and operate solid waste collection systems; I.C. § 50–322 empowers the cities to establish, create, develop, maintain and operate domestic water systems; and I.C. § 50–325 authorizes the cities to acquire, own, maintain and operate electric power plants. Furthermore, I.C. §§ 50–329 and –330 confer on the cities the authority to grant franchises to provide these services and thereafter regulate the franchise holders should the cities choose not to provide their own utility services.

These Idaho statutes clearly contemplate that a city or municipality may engage in activities such as those under consideration in the present action. Such activity is a foreseeable result of empowering the cities to engage in the operation of their own utilities and these activities do not constitute unfair competition nor antitrust violations. The clear state policy is to displace competition in the providing of utility service with regulation of a monopoly public service. Moreover, in *Idaho Power & Light Co. v. Blomquist,* 26 Idaho 222, 141 P. 1083 (1914), this Court held:

> There is nothing in the Constitution that prohibits the legislature from enacting

---

2. In framing the antitrust question presented, the *Denman* Court stated the issue as follows:
 The chief question raised touching the insufficiency of the fifth amended complaint is: Are municipal corporations amenable to the

Anti-trust Law (C.S., chap. 116, sec. 2531 et seq.) and was it the intention of the legislature to include municipal corporations therein.
51 Idaho at 120, 4 P.2d at 362.

laws prohibiting competition between public utility corporations, and the legislature of this state no doubt concluded that a business like that of transmitting electricity to the streets of the city and furnishing light and power to the people must be transacted by a regulated monopoly, and that free competition between as many companies or as many persons as might desire to put up wires in the streets is impractical and not for the best interest of the people.

*Id.*, 26 Idaho at 241, 141 P. at 1088. In *Town of Hallie v. City of Eau Claire*, the United States Supreme Court held that active state supervision is not a prerequisite to exemption from the anti-trust laws where the actor is a municipality rather than a private party. Further, private public utilities in this state are heavily regulated by the Idaho Public Utilities Commission, thus showing the intent of the legislature to replace competition by regulation. *Idaho Power & Light Co. v. Blomquist*, 26 Idaho 222, 141 P. 1083 (1914). We hold that the district court did not err in dismissing plaintiffs' antitrust claims.

## IV.

### Authority To Grant Franchises

A fundamental issue before this Court is what entity, *i.e.*, the municipalities or the highway district, has the power and authority to contract with and grant franchises to the various utilities. We hold that the proper party to grant franchises under the circumstances presented are the municipalities.

■ Municipal corporations in Idaho may exercise only those powers granted to them by the state Constitution or the legislature. *Caesar v. State*, 101 Idaho 158, 160, 610 P.2d 517, 519 (1980); *Washington Water Power Co. v. Kootenai*, 99 Idaho 875, 591 P.2d 122 (1979); *Arrow Transp. Co. v. Idaho Pub. Utils. Comm'n*, 85 Idaho 307, 379 P.2d 422 (1963); *Sandpoint Water & Light Co. v. City of Sandpoint*, 31 Idaho 498, 173 P. 972 (1918).

■ The Idaho legislature has specifically granted franchise authority to municipal corporations. I.C. § 50–329 states in pertinent part:

No franchise shall be created or granted by the city council otherwise than by ordinance, and the passage of any such ordinance shall require the affirmative vote of one-half (½) plus one (1) of the members of the full council.

The historical legal basis of utilities receiving franchises from the municipalities has its origin in I.C. § 40–2308 which provides:

**40–2308. Corporations may lay tracks and water mains.**—Every gas, water, or railroad corporation has the power to lay conductors and tracks through the public ways and squares in any city with the consent of the city authorities, and under reasonable regulations and for just compensation, as the city authorities and the law prescribe.

In addition to requiring that the utilities obtain consent from the cities to operate a service utility, I.C. § 40–2308, this section allows imposition of reasonable regulations upon the utility by the cities and provides for just compensation to be paid by the utility as prescribed by the city authorities.

The right to charge a fee for a water franchise is expressly approved in art. 15 § 2 of the Idaho Constitution which provides:

**Right to collect rates a franchise.**—The right to collect rates or compensation for the use of water supplied to any county, city, or town or water district, or the inhabitants thereof, is a franchise, and can not be exercised except by authority of and in the manner prescribed by law.

City franchising authority was recognized by this Court in *Jack v. Village of Grangeville*, 9 Idaho 291, 74 P. 969 (1903) wherein the Court stated:

It is the duty of the municipality to light its public streets and to furnish its inhabitants with the means of obtaining gas at their own expense, and having the power by legislative grant to erect and maintain gasworks for that purpose, it necessarily follows that it had the implied power to

contract with others to furnish it in like manner,....

*Id.*, 9 Idaho at 316, 74 P. at 974.

In *Sandpoint Water & Light Co. v. City of Sandpoint* this Court further recognized city franchising authority wherein the Court held that in granting a franchise, a municipal corporation is not exercising its own powers but is exercising only such powers as have been conferred upon it by the state.

In 1971 the Ada County Highway District (ACHD) was created and the legislature granted county-wide highway districts general supervisory control over all highways and roadways within the respective district. The legislature also conveyed ACHD title to all the streets, highways and related rights-of-way in Ada County on behalf of the public. The highway district contends that this conveyance by the legislature resulted in granting it authority to grant to utilities a franchise. The highway district contends that as I.C. § 40–1406 states "[w]herever any provisions of the existing laws of the state of Idaho are in conflict with the provisions of this chapter, the provisions of this chapter shall control and supersede all such laws," that the authority of the cities to grant utility franchises has been superseded. We disagree and expressly hold that the highway district legislation contained in Title 40, chapters 13 and 14, does not supercede the well-established law vesting power to grant franchises to utilities in the cities. Idaho Const. art. 15, § 2; I.C. §§ 40–2308, 50–329. The highway district's reliance upon I.C. § 40–1406 as the basis for asserting that it supercedes the law controlling utility franchises is misplaced. The language of I.C. § 40–1406 is primarily in reference to imposition of ad valorem taxes and cannot be extended to replace the constitutional and statutory provisions controlling utility franchises.

The term "franchise" has been interpreted to mean a grant of a right to use property over which the granting authority has control. 36 *Am.Jur.2d Franchises* § 1. Idaho Code § 50–328, which expressly addresses the regulation of utility trans-mission systems, gives the "city" the authority over all lands, not solely the public streets, which are owned or under control of such city. This power was recognized in *Village of Lapwai v. Alligier*, 78 Idaho 124, 299 P.2d 475 (1956) wherein the Court stated:

> [T]he legislature, in providing for the use of streets and alleys by utilities, expressly required the consent of the municipal authorities, and authorized the municipal authorities to impose reasonable regulations upon such use.
>
> Thus, the legislature ... has preserved to the municipality the power to deny their use to a utility, or to impose reasonable regulations thereon, when necessary to the use of such streets and alleys by the public in the usual manner.

*Id.*, 78 Idaho at 129, 299 P.2d at 478.

Idaho Code § 40–1406 cannot be construed to suggest that the legislature bestowed authority on the highway district to grant franchises to public utilities. Such an interpretation is clearly contrary to the grant of powers given to the highway districts by the legislature. Idaho Code § 40–1310 expressly sets forth the specific powers and jurisdiction vested in highway commissions. The authority to grant utility franchises is certainly not among the powers enumerated as being vested in a highway district and we agree with the district court that this power belongs to the cities.

Although highway districts have broad powers and authority over streets and highways, it must be held in balance with the statutory responsibilities of other entities. *Worley Highway Dist. v. Kootenai County*, 104 Idaho 833, 663 P.2d 1135 (Ct. App.1983). The highway districts' authority does not extend to control the granting of utility franchises which have been vested in the cities.

It is undisputed that municipal corporations in Idaho have the power to operate their own utility systems and provide water, power, light, gas and other utility services within the city limits. I.C. § 50–323; § 50–325. The constitutional and statutory grant of franchise authority to the cities in

this respect is not nullified or altered by I.C. § 40–1406. To give the power to award franchises to ACHD would extend the powers of the highway district well beyond those intended by the legislature and would infringe upon the express authority delegated to the cities to contract with utility companies and grant franchises for utility services. We affirm the district court's ruling in this regard and hold that the power to grant franchises rests in the municipalities rather than the Ada County Highway District.

## V.

*Franchises Are Valid Legal Agreements*

■ A. *Franchise is a Contract.* Idaho Code § 50–329 articulates the method by which a city may pass an ordinance granting a franchise and the franchise ordinances are presumed valid with the burden on those challenging the ordinance to prove its invalidity. *Continental Oil Co. v. Twin Falls,* 49 Idaho 89, 286 P. 353 (1930).

■ The Idaho Court of Appeals has correctly held that "[a] franchise ordinance represents a contract between the city and its grantee." *City of Hayden v. Washington Water Power,* 108 Idaho 467, 468, 700 P.2d 89, 90 (Ct.App.1985). Courts have repeatedly recognized that since a franchise is a contract between a government body and a private entity, it is binding upon the parties, enforceable and entitled to the respect a court must give all valid contracts. *Appalachian Power Co. v. City of Huntington,* 158 W.Va. 240, 210 S.E.2d 471 (1974); *City of W. Palm Beach v. Florida Pub. Serv. Comm'n,* 224 So.2d 322 (Fla.1969). The franchise agreements existing in the present appeal are reasonable and necessary for the needs and convenience of the residents of the various communities and are legally binding and enforceable contracts between the parties.

■ B. *Franchise Fee.* The practice of charging franchise fees as consideration for the granting of a franchise was first noted in *Boise City v. Idaho Power Co.,* 37 Idaho 798, 220 P. 483 (1923), which involved the issue of cancellation of a franchise contract where Idaho Power had purchased two competing power plants and sought to consolidate the franchises. As consideration for the granting of the franchise, Boise City had charged a percentage of the utility's gross revenue collected from its Boise patrons. The Court held that the Commission had no authority to invalidate the franchise cancellation agreement entered into between Boise City and Idaho Power, and further held that payments from the utility to the city constituted valid consideration for a valuable property right which the city surrendered.

It is well established that Idaho cities have the right to own and operate utilities and provide those services to their residents. The cities contend that their surrender of this right is valid consideration for the franchise fee charged to the utilities. We agree. The franchise agreements in the present case are contracts and the franchise fees are simply payments or consideration for the rights granted by the cities to the utilities. Idaho Const. art. 15, § 2; I.C. § 40–2308.

■ C. *Franchise Fee is Not a Tax.* Appellants Alpert and ACHD contend that the franchise fee is in reality a tax, and cannot legally be imposed upon the utilities' customers. The district court correctly held that the charge imposed was not a tax but was contract consideration for the franchise granted. We agree. The three percent charge is valid consideration for the cities granting the franchises and agreeing not to compete with the utilities. The incorrect reference to the franchise fee as a tax by the Idaho Public Utilities Commission does not change its legal nature. The three percent surcharge is simply a payment in consideration for the franchise to operate the utilities by the various municipalities. The charging of a fee for the utility franchise is reasonable compensation and consideration to the cities as expressly allowed by art. 15, § 2 of the Idaho Constitution and I.C. § 40–2308.

Appellants Alpert and Flying H cite *Brewster v. Pocatello,* 115 Idaho 502, 768 P.2d 765 (1988), in support of their assertion that the franchise fee in this action is a

tax. The tax imposed in *Brewster* is certainly distinguishable from the franchise fee being charged by the utilities and cities in this action. Although a different statute was involved in *Brewster,* the case is instructive to analyze the distinction between a fee and a tax.

In the instant case it is clear that the revenue to be collected from Pocatello's street fee has no necessary relationship to the regulation of travel over its streets, but rather is to generate funds for the non-regulatory function of repairing and maintaining streets. The maintenance and repair of streets is a non-regulatory function as the terms apply to the facts of the instant case. We view the essence of the charge at issue here as imposed on occupants or owners of property for the privilege of having a public street abut their property. In that respect it is not dissimilar from a tax imposed for the privilege of owning property within the municipal limits of Pocatello. The privilege of having the usage of city streets which abuts one's property, is in no respect different from the privilege shared by the general public in the usage of public streets.

We agree with appellants that municipalities at times provide sewer, water and electrical services to its residents. However, those services, in one way or another, are based on user's consumption of the particular commodity, as are fees imposed for public services such as the recording of wills or filing legal actions. In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs.

While otherwise argued, we see it clear that the municipal ordinance in question is not designed for the regulation of traffic under the police power, but rather clearly a revenue raising measure.

*Id.,* 115 Idaho at 504, 768 P.2d at 767–68.

In the instant case the legislature has given to the cities the authority to either provide the utility services directly or allow a franchisee to provide those services to its residents. Likewise, the cases, statutes and the Idaho Constitution cited herein clearly allow the charging of a reasonable fee for granting a franchise to a utility. In addition, the franchise agreements in this case provide that the municipalities or cities will not compete with the utilities in providing these services. The three percent franchise fee is not imposed on the residents directly by the cities, but is paid by the utilities to the cities and as a cost of business is then passed on to the consumers by the utilities. Although the users of the utility services eventually pay the three percent fee it is not a tax on the general public. *Brewster v. Pocatello,* 115 Idaho 502, 768 P.2d 765 (1988). The water and gas services provided by the utilities in this case are based on consumption and use by the resident. As noted in *Brewster,* the providing of sewer, water, electrical and other utility services to residents based on consumption of the commodity is a charge for a direct public service as compared to a tax which is a forced contribution by the public-at-large for revenue raising purposes. As such the tax imposed in *Brewster* is clearly distinguishable from the fee charged on the accounts of the consumers of the utility service presented in this case. We hold that the three percent fee charged to the customers of the various gas and water utilities is a valid franchise fee and not a prohibited tax.

## VI.

### *Denial Of Attorney Fees By Trial Court*

 Subsequent to dismissal of the plaintiffs' amended complaint and the Ada County Highway District's complaint in intervention, the district court awarded certain costs to defendant cities and utilities. The district court concluded that although plaintiffs' theories were novel and not well-founded, the action did not fall within I.C. § 12–121 and declined to award attorney fees. Idaho law provides for an award of attorney fees when the court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. Idaho Code § 12–121; I.R.C.P.

54(e)(1) or 54(e)(2). The award of attorney fees is within the discretion of the district court and in absence of an abuse of discretion such an award, or lack thereof, will not be disturbed on appeal. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982).

Upon review of the district court's award of costs and denial of attorney fees we find no abuse of discretion.

## VII.

### *Attorney Fees On Appeal*

■ Respondents have requested that we award attorney fees on appeal pursuant to I.A.R. 41. It is well established that attorney fees on appeal will not be awarded where the appeal was not brought frivolously, unreasonably and without foundation. *Keller v. Rogstad*, 112 Idaho 484, 733 P.2d 705 (1987). In the present appeal we have reviewed the record and determined that legitimate issues have been presented precluding an award of attorney fees on appeal.

We affirm the decision of the trial court. Costs to respondent cities and utilities. No fees allowed.

BAKES, C.J., and DOOLITTLE, District Judge Pro Tem., concur.

BISTLINE, Justice, specially concurring.

I applaud the majority's decision not to award attorneys' fees in this matter, and I concur with almost all of the majority opinion. As to part V. C., 118 Idaho at 144–145, 795 P.2d at 306–307, however, I concur only in the result.

The majority's title for this section of its opinion, "Franchise Fee is Not a Tax," is misleading, and the majority has totally misunderstood the issue raised by the plaintiffs concerning the fee. The assertion that "the charge imposed was not a tax but was contract consideration for the franchise granted" is fine as far as it goes. However, the question here is not whether the municipalities and the utilities can legitimately contract for payment by the utilities to the cities "in consideration for the franchise to operate the utilities by the various municipalities." Rather, the question is whether that payment can legitimately be passed through to the residents of the municipalities in the form of a utility surcharge.

In response to *that* question, the recent case of *Brewster v. City of Pocatello*, 115 Idaho 502, 504, 768 P.2d 765, 767 (1988), is informative, although it supports a conclusion exactly opposite to that for which it is cited by the majority. *Brewster* states the following:

We view the essence of the charge at issue here as imposed on occupants or owners of property for *the privilege of having a public street abut their property*. In that respect it is not dissimilar from a tax imposed for *the privilege* of owning property within the municipal limits of Pocatello. The privilege of having the usage of city streets which abuts (sic) one's property, is in no respect different from *the privilege shared by the general public in the usage of public streets*.

We agree with appellants that municipalities at times *provide* sewer, water and electrical services to [their] residents. However, those services, in one way or another, are based on *user's consumption of the particular commodity*, as are fees imposed for public services such as the recording of wills or filing legal actions. In a general sense *a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs*.

While otherwise argued, we see it clear that the municipal ordinance in question is not designed for the regulation of traffic under the police power, but rather clearly a *revenue raising measure*.

*Id.*, 115 Idaho at 504, 768 P.2d at 767 (emphasis added).

The surcharge here at issue has far more of the characteristics of a tax than of a fee. While it is technically collected by the utilities, it passes directly through their accounts as payment to the municipalities of

the franchise fee. Yet the municipalities furnish neither a service nor a commodity to the consumer who pays the surcharge. The surcharge, in essence, is imposed on residents of the municipalities for the privilege of being utility users within the city limits. Since the municipality furnishes no service or commodity, the surcharge is clearly a revenue raising measure.

Thus, according to the standard set forth in *Brewster*, this surcharge is a tax in sheep's clothing. Why, then, a special concurrence rather than a dissent? Simply, because the plaintiffs took action against the wrong parties on this issue. Presently it appears to me that the Public Utility Commission allowed the utilities to impose this "surcharge" on their customers. It is therefore the decision of the Commission which should have been appealed. As the plaintiffs did not take that action (at least such an action is not before us on review), I concur in the majority's affirmance of the summary judgment in favor of the utilities and the municipalities.

JOHNSON, Justice, concurring and dissenting.

I concur in all of the opinion of the Court, except the portion that affirms the trial court's denial of costs to the City of Garden City for photocopying charges.

The respondent cities filed memoranda of costs with the trial court within fourteen days after entry of judgment as required by I.R.C.P. 54(d)(5). The memoranda of costs listed photocopying charges in the following amounts:

| | |
|---|---|
| City of Kuna | $ 53.46 |
| City of Meridian | $421.25 |
| City of Garden City | $439.90 |

The trial court's Order Settling Costs and Attorney Fees awarded photocopying costs to the City of Kuna and the City of Meridian. The court failed to award photocopying costs to the City of Garden City, but gave no explanation for the omission.

This issue should be remanded to the trial court which should do one of three things: (1) award photocopying costs to all three cities, (2) explain the rationale for denying Garden City its photocopying

costs, or (3) deny photocopying costs to all three cities.