NATIONAL ASSOCIATION OF REGULATORY UTILITY COMMISSIONERS, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 74–790.

United States District Court, District of Columbia.

June 9, 1975.

**592**

Paul Rodgers, Washington, D. C., for plaintiff.

John H. D. Wigger, Dept. of Justice, Hanford O'Hara, I.C.C., for defendants.

---

Before FAHY, Senior Circuit Judge, and ROBINSON and RICHEY, District Judges.

## OPINION

AUBREY E. ROBINSON, Jr., District Judge.

The National Association of Regulatory Utility Commissioners (hereinafter NARUC) is a quasi-governmental organization whose members represent the governmental bodies of the fifty states and the District of Columbia engaged in the regulation of carriers and utilities. NARUC brings this action against the Interstate Commerce Commission (hereinafter the ICC or the Commission) and the United States to enjoin, set aside and annul orders of the ICC issued in *State Registration of Emergency Temporary and Temporary Authority,* Ex Parte No. MC–67,119 M.C.C. 327.[1] Pursuant to 28 U.S.C. § 2325, a Three-Judge Court was convened to determine this question. The Court having reviewed the briefs and heard oral argument by the parties concludes that the Commission's action challenged herein was within the scope of the authority conferred upon it by Congress and conformed to procedural requirements. Therefore the Commission's decision must be sustained.

A brief history of the dispute giving rise to this litigation and an overview of the regulatory scheme involved is hereafter set forth in explanation of the Court's decision.

Motor carriers of passengers or property are required to have operating authority from the ICC in order to provide services lawfully on interstate commerce.[2] There are two classes of regulated motor carriers, common carriers and contract carriers.[3] Permanent operating authorities for the former are denominated certificates of public convenience and necessity ("certificates");

---

1. By Order issued May 24, 1974, the ICC has suspended the effectiveness of the Order pending a resolution of this action.

2. 49 U.S.C. §§ 306(a)(1), 309(a)(1).

3. 49 U.S.C. § 303(a)(14), (15).

for the latter, they are denominated "permits." "Certificates" and "permits" are issued only after full adversary proceedings, replete with procedural safeguards.

In addition to the above, the ICC has authority to issue temporary authorities to meet immediate transportation needs, pursuant to 49 U.S.C. § 310a(a).[4] This provision, which is set out at the margin, makes clear and the cases have so held that temporary authorities are quite different, at least procedurally, from "certificates" and "permits."[5] To be specific, the standards for initially granting, the discretion of the ICC in issuing and the process for administrative review are all quite different with regard to temporary authorities.

Juxtaposed with the complex Federal regulatory scheme over motor carriers, was the established system within each State for motor carrier registration prior to use of their respective highways. These registration requirements required truckers *inter alia* to register their ICC issued operating authorities (both temporary and permanent), to register and identify their vehicles and to register evidence of insurance and designation of local agent for service of process.

Due to the variety of registration requirements, the burden on interstate motor carriers attempting to comply, and the growth of illegal trucking, a movement arose for standardization of these state registration requirements. In 1965 Congress amended the Interstate Commerce Act to include 49 U.S.C. § 302(b)(2).[6] The amendment set forth a unique procedure for promulgating uni-

---

4. 49 U.S.C. § 310a(a) provides:

   To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having *no carrier service capable of meeting such* need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter.

5. *H.C.&D. Moving and Storage Company v. United States*, 317 F.Supp. 881 at 883 (D. Hawaii 1970); *Land-Air Delivery, Inc. v. United States*, 371 F.Supp. 217 (D.Kan. 1973).

6. 49 U.S.C. § 302(b)(2) provides in pertinent part:

   The requirement by a State that any motor carrier operating in interstate or foreign commerce within the borders of that State register its certificate of public convenience and necessity or permit issued by the Commission shall not constitute an undue burden on interstate commerce provided that such registration is accomplished in accordance with standards, or amendments thereto, determined and officially certified to the Commission by the national organization of the State Commissions, as referred to in Section 305(f) of this title, and promulgated by the Commission. As so certified, such standards, or amendments thereto, shall be promulgated forthwith by the Commission and shall become effective five years from the date of such promulgation. As used in this paragraph, "standards or amendments thereto" shall mean specification of forms and procedures required to evidence the lawfulness of interstate operations of a carrier within a State by (a) filing and maintaining current records of the certificates and permits issued by the Commission, (b) registering and identifying vehicles as operating under such certificates and permits, (c) filing and maintaining evidence of currently effective insurance or qualifications as a self-insurer under rules and regulations of the Commission, and (d) filing designations of local agents for service of process. Different standards may be determined and promulgated for each of the classes of carriers as differences in their operations may warrant. In determining or amending such standards, the national organization of the State commissions shall consult with the Commission and with representatives of motor carriers subject to State registration requirements. To the extent that any State requirements for registration of motor carrier certificates or permits issued by the Commission imposed obligations which are in excess of the standards or amendments thereto promulgated under this paragraph, such excessive re-

form standards whereby the standards were to be adopted first by the "national organization of the State Commissioners" (NARUC), certified by NARUC to the ICC, and then promulgated by the ICC. The statute declared that state registration requirements which meet the standardized requirements are not an undue burden on interstate commerce. The thinking at the time was that uniform standards would make registration significantly easier for the motor carriers while facilitating enforcement of the requirements in each State.[7]

In 1966 NARUC adopted initial standards which were certified to the ICC and subsequently promulgated. These standards, codified at 49 C.F.R. Part 1023, set forth uniform registration requirements for motor carriers including registration of both temporary and permanent authorities. Specifically, one of the standards provides that a temporary authority of thirty (30) days or less duration need not be registered in a State if the motor carrier has already registered a previously issued authority and notifies the State of its newly issued ICC temporary authority.[8]

This provision which exempts certain carriers operating with temporary authorities from state registration is at the core of this dispute. In August, 1973, the ICC issued notice of proposed rulemaking to amend this provision, to provide an extension of the exemption to carriers with temporary authorities of ninety (90) days duration.[9] In addition, the amendment provides a simplified notification procedure for those carriers who have no previous authority already registered in a State, permitting them to notify the State personally without ICC verification. The ICC adopted the proposed rule[10] despite NARUC's contention that this amendment to the standards

could not be promulgated through rulemaking, but must be adopted first by NARUC, then certified to the ICC, as provided by 49 U.S.C. § 302(b)(2) and as followed on all previous occasions when the uniform standards were issued and amended.

It is this act of the Commission which is currently before the Court for review. NARUC contends that this regulation which amends the uniform standards should be set aside because it was promulgated in an illegal manner. Plaintiff argues that when Congress amended the Interstate Commerce Act to include a unique procedure for promulgation of uniform standards for state registration requirements through initial adoption by the NARUC and subsequent certification to the ICC, Congress intended that NARUC would have exclusive jurisdiction over the standards for registration of both temporary and permanent authorities. Petitioners recite legislative history, contemporaneous construction by the Commission and logic as supportive of their position that the terms "certificates" and "permits" should be interpreted to include "temporary authorities". In the alternative, NARUC argues that the regulation is arbitrary and capricious, lacking adequate support in the record.

■ In response, the Commission asserts that the Congressionally mandated registration procedure prescribed in 49 U.S.C. § 302(b)(2) applies only to "certificates" and "permits" as evidenced by Congress's selection of those terms in the statute, and does not extend to registration of temporary authorities issued under 49 U.S.C. § 310a(a). It is the Commission's position that Congress granted it broad authority to administer the area of temporary operating authorities to meet immediate transportation

---

7. H.R.Rep.No.253, 89th Cong., 1st Sess., (1965), at pg. 4, 1965 U.S.Code Cong. & Adm. News, at p. 2923.

quirements shall, on the effective date of such standards, constitute an undue burden on interstate commerce . . .

8. 49 C.F.R. § 1023.11.

9. 49 C.F.R. § 1131.7.

10. 119 M.C.C. 327.

needs. The Commission argues that where state registration requirements interfere with that sphere of authority, the Commission has the duty to prescribe reasonable rules regulating the "continuous and adequate service" they are required to protect.[11]

Looking at the face of the statute, the Court concludes that the Commission's position is the correct one. The statutory provision which withdraws from the ICC authority over regulating state registration requirements is clear and unambiguous in its use of the precise terms of "certificates" and "permits." 49 U.S.C. 310a(a) which grants the Commission authority to issue temporary authorities was enacted in 1938, and motor carriers operating under temporary authorities occupied a significant and well-known position in the industry at the time this provision for uniform standards was enacted. Had Congress intended to include temporary authorities in this statutory scheme for standardization, it would have chosen words to so indicate.

■ Plaintiff refers to substantial portions of the legislative history to support the argument that Congress intended to include both temporary and permanent authorities in its grant of jurisdiction over uniform standards to NARUC,

despite the use of more restrictive terms "certificate" and "permits." It is a well recognized principle of statutory construction, however, that legislative history should be used to resolve ambiguities, and not to create them.[12] For this reason, the Court is of the opinion that any exhaustive discussion of or indeed resort to the legislative history to resolve the issue presented would be unnecessary and improper in this case.

Nevertheless, the Court has reviewed the legislative history and fails to find persuasive evidence that Congress intended other than what it stated and made clear in wording this statute. Therefore, it is the decision of this Court that 49 U.S.C. § 302(b)(2) which grants to a national organization of State Commissioners jurisdiction to adopt uniform registration requirements does not encompass the area of temporary authorities.

■ The Court having concluded that the Commission has authority to amend the registration requirements pertaining to temporary authorities, the only contention left for resolution is whether the record before the Court supports the Commission's decision to adopt the proposed revision of the requirements.[13] The Court's review function is quite circumscribed in cases of this nature. The

11. 49 U.S.C. § 304(a)(1) and (6).

12. *Wisconsin R.R. Comm. v. C.B. & Q.R.R. Co.*, 257 U.S. 563, at 589, 42 S.Ct. 232, 66 L.Ed. 371 (1922); *Penn. R.R. Co. v. International Coal Co.*, 230 U.S. 184, at 199, 33 S.Ct. 893, 57 L.Ed. 1446 (1913).

13. Prior to the present amendment the manner of such registration was prescribed in 49 C.R.F. § 1023.11, which provided that temporary authority of 30 days or less need not be registered with the State if the carrier has: (a) Registered its other authority and identified its vehicles or driveaway operation under the provisions of these standards; and (b) furnished to the State commission a telegram or other written communication describing such emergency or temporary operating authority and stating that operation thereunder shall be in full accord with the requirements of these standards. The present rule modified the above conditions as follows:

Notwithstanding the provisions of 49 C.F.R. 1023.11, a motor carrier shall not be required to file with a State commission an emergency or temporary operating authority having a duration of 90 consecutive days or less if such carrier has: (a) registered its other authority granted by the Interstate Commerce Commission authorizing operation in or through the involved State (a carrier possessing no other such authority may qualify for this exception upon compliance only with condition (b) below) and identified its vehicles or driveaway operation under the provisions of those standards set forth at 40 C.F.R. 1023.31–1023.42, both inclusive; and (b) furnished to the State commission a telegram or other written communication from the motor carrier describing such emergency or temporary operating authority and stating that operation thereunder shall be in full accord with the requirements of those standards set forth at 49 C.F.R. 1023.1 *et seq.*

proper standard for judicial review of this regulation is whether the Commission's conclusions are rationally supported in the record.[14]

Applying this standard to the record currently before us, the Court concludes that the decision must be sustained.

The principal issue raised by petitioner as to the absence of record support is that the Commission's assertion in its notice of the proposed change that it had come to its attention that certain state requirements concerning the registration of temporary authorities were generating delays for urgently needed services is unsupported by the record. Petitioner emphasizes,

> In any event, how the Commission determined that the process "usually takes between 10 to 14 days" was, and remains to this day, a total mystery.[15]

■ The validity of the action of the Commission would not seem to depend upon proof of finding of any specified number of days of delay. NARUC does not contend that no delays are caused by the state registration requirements, or that the Commission's concern to prevent delay is without foundation. NARUC does question the position of the Commission that the delays are due to state requirements. It points to the likelihood that in the end such delays as might otherwise be due to state requirements, if considered alone, are offset by concurrent delays by the Commission itself after the temporary authority is granted. While the Commission may have dealt more explicit with the matter of length of delay, there is ample evidence in the record, from the comments submitted by several States, of variations in notification procedures previously required by the States, and this is intertwined with the general problem of delay.[16] Moreover, from the record as a whole it appears that the objective of achieving more expeditious service by the amended rule is not without rational support. In so concluding weight is given, as it must be, to the judgment of the Commission as to the need for simplification and more uniformity of the procedures, so as to enable the carrier more readily to begin operations once the Commission has authorized services of immediate and urgent need.

It is noted that the action of the Commission has been suspended in effectiveness awaiting judicial review. During this period since December, 1973, much experience no doubt has accumulated. The Commission may wish to consider the subject in light of such experience; but the Court is not justified in holding the action taken to be invalid as without rational support. Therefore, the Commission's decision in *State Registration of Emergency Temporary and Temporary Authority*, Ex Parte No. MC–67, 119 M.C.C. 327, is upheld and this case is dismissed.

---

14. *United States v. Allegheny-Ludlum Steel*, 406 U.S. 742 at 749, 92 S.Ct. 1941, 32 L.Ed. 2d 453 (1972) ; *California Citizen's Band Assn. v. United States*, 375 F.2d 43, 53–54 (9th Cir. 1967), cert. denied, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967).

15. Petitioner's Reply Br., p. 30.

16. The Commission states:
   Certain states have apparently refused to accept telegrams from the carriers and insist that the Commission must originate the communication. This also reduces the time period of a temporary authority and prohibits a carrier from providing a service urgently required.