871 P.2d 818

**OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and J.R. Hansen, and on behalf of themselves and as class representatives of all others similarly situated, Plaintiffs–Appellants, Cross–Respondents,**

v.

**The IDAHO PUBLIC UTILITIES COMMISSION, The Idaho Department of Law Enforcement, Idaho State Treasurer, and State of Idaho, Defendants–Respondents, Cross–Appellants.**

**No. 20428.**

Supreme Court of Idaho.

March 16, 1994.

Hawley, Troxell, Ennis & Hawley, Boise, Collier, Shannon & Scott, Washington, D.C., for appellants/cross-respondents. K. Michael O'Connell argued.

Larry EchoHawk, Idaho Atty. Gen., Michael S. Gilmore, Deputy Atty. Gen., Boise,

for respondents/cross-appellants. Michael S. Gilmore argued.

TROUT, Justice.

## I.

### BACKGROUND AND PROCEDURAL HISTORY

This is an appeal from a district court determination that certain interstate motor carriers are entitled to a refund of a portion of the fees they have paid to renew their registration of Interstate Commerce Commission ("I.C.C.") operating authority. The appellants are the Owner–Operator Independent Drivers Association, Inc., and J.R. Hansen, as a class representative of all other interstate carriers similarly situated ("OOI-DA"). The respondents are the Idaho Public Utilities Commission, the Idaho Department of Law Enforcement, the Idaho State Treasurer, and the State of Idaho ("IPUC"). This action was commenced when a lawsuit was filed by OOIDA against the IPUC for imposing an impermissibly high registration renewal fee.

A brief explanation of the genesis of the regulation of interstate motor carriers is important in understanding the conflict between state and federal laws in this case. In 1935, Congress enacted the Motor Carrier Act as Part II of the Interstate Commerce Act, which is currently codified at 49 U.S.C. §§ 10101 *et seq.* The Motor Carrier Act gave the I.C.C. the authority to regulate motor carriers engaged in interstate commerce. Thereafter states began to impose their own requirements and fees on the motor carriers which forced the carriers to comply with a number of different and sometimes conflicting regulations. *National Ass'n of Regulatory Util. Comm'rs. v. United States,* 397 F.Supp. 591 (D.D.C.1975), *cert. denied,* 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976).

In order to address the burden imposed on the interstate carriers by state regulations, Congress enacted Public Law No. 89–170, 79 Stat. 648 (1965), 49 U.S.C. § 11506. In that statute the I.C.C. was directed to establish uniform procedures and standards for, among other things, the filing and maintaining of certificates and permits issued by the I.C.C. and for the registering and identifying of vehicles operating under I.C.C. certificates. 49 U.S.C. § 11506(c). That statute provides in part:

(b) **General rule.**—The requirement of a state that a motor carrier, providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title and providing transportation in that State, register the certificate or permit issued to the carrier under section 10922 or 10923 of this title is not an unreasonable burden on transportation referred to in section 10521(a)(1) and (2) of this title when the registration is completed under standards of the Commission under subsection (c) of this section. *When a State registration requirement imposes obligations in excess of the standards, the part in excess is an unreasonable burden....* (Emphasis added.)

The I.C.C. then promulgated regulations which governed the standards and procedures for states desiring to regulate registration of the operating authority of an interstate carrier (49 C.F.R. §§ 1023.11–15) and registration and identification of particular vehicles which are operating under I.C.C. authority (49 C.F.R. §§ 1023.31–42).

Pursuant to the authority vested by the I.C.C. regulations, the Idaho legislature amended I.C. § 61–812 to give the IPUC the responsibility of charging all interstate carriers twenty-five dollars for annual registration of interstate carrier authority or exemption, whether they were applying originally to register their operating authority or were seeking only to renew it.

OOIDA filed suit on December 7, 1990, maintaining that the legislature had exceeded the registration authority given to it by the I.C.C. and that the flat rate of twenty-five dollars per registration exceeded by fifteen dollars the permissible fee for renewal of registration by each interstate carrier. The suit was certified as a class consisting of all interstate carriers who paid the allegedly excessive registration renewal fee. Specifically OOIDA requested relief on four grounds: (1) that I.C. § 61–812, which im-

posed a registration renewal fee of twenty-five dollars, violated 49 C.F.R. § 1023.13; (2) that I.C. § 61–812 violated the commerce clause by imposing a registration renewal fee upon interstate carriers that was an unreasonable burden on interstate commerce; (3) that by enforcing I.C. § 61–812, the IPUC violated 42 U.S.C. § 1983 by imposing a renewal registration fee in violation of the commerce clause, thus depriving the carriers of constitutional rights under the color of law; and (4) that they were entitled to injunctive relief from further enforcement of the unconstitutional Idaho statute. Shortly after the complaint was filed, the legislature amended § 61–812 to provide for a fee of twenty-five dollars for initial registration of operating authority and a reduced fee of ten dollars for annual renewal of that registration.

On April 9, 1991, both parties filed cross-motions for summary judgment. The district court, on May 12, 1992, granted in part both parties' motions. In its Memorandum Decision and Order of May 12, 1992, the District Court found that at the time suit was originally filed, I.C. § 61–812 violated the Commerce Clause of the United States Constitution. However, because the statute had subsequently been amended to reduce the amount charged for registration renewal, the court did not have to declare it unconstitutional and did not grant the request for an injunction to enjoin its enforcement. The Court further held:

1. That the State did not provide the interstate carriers meaningful pre-deprivation or post-deprivation relief from the imposition of the unlawful fee, and that there was no need for the taxpayers to pay under protest in order to be entitled to a refund;

2. Only single vehicle interstate carriers could recover a five dollar refund for renewal fees paid over the past three years due to a limitation of liability against the State under I.C. § 5–218(1)[1];

3. That Congress intended twenty dollars to be a reasonable burden on commerce because 49 C.F.R. 1023.13 pro-

vided for a ten dollar renewal of registration fee and 49 C.F.R. 1023.33 provided a ten dollar fee for vehicle identification. Thus Congress intended twenty dollars as a reasonable burden which the State of Idaho could charge;

4. That attorney fees would not be awarded under 42 U.S.C. § 1988 to either party. OOIDA could not recover because § 1983 and § 1988 did not apply to the State or to state officials acting in their official capacity. The IPUC was not entitled to attorney fees under 42 U.S.C. § 1988 as the suit never would have been brought but for the unconstitutional statute;

5. That there was no overall prevailing party to justify an award of attorney fees under Idaho laws.

By special motion the court established a distribution plan, and awarded attorney fees in the amount of twenty-five percent pursuant to the Idaho Common Fund doctrine. The court entered a final judgment on December 2, 1992. Appeal was taken by both parties.

On appeal we must address the question of whether the district court correctly calculated the amount of refund to which the class members of OOIDA were entitled. We are also asked to review the district court's holding regarding the necessity for paying this fee under protest in order to preserve the right to challenge it, and finally whether the court's ruling on attorney fees was in error.

## II.

### THE DISTRICT COURT ERRED BY COMBINING TWO FEDERAL REGULATIONS TO DETERMINE THE PERMISSIBLE BURDEN ON INTERSTATE COMMERCE AND BY ALLOWING ONLY SINGLE VEHICLE CARRIERS A FIVE DOLLAR REFUND

█ OOIDA argues on appeal that the district court improperly combined two federal regulations to determine a permissible

---

1. The application of I.C. § 5–218(1) by the district court to limit the carriers recovery to three years of excessive fees preceding the amendment of I.C. § 61–812 is not challenged on appeal.

burden on interstate commerce. Thus the court erred by allowing only single vehicle carriers to recover payment in the amount of five dollars of the excessive fees paid. We agree that the district court miscalculated the refund amount.

The district court, on summary judgment, ruled that it was entitled to determine what Congress intended to be a permissible burden on interstate commerce. In doing so, the district court determined that Congress specifically allowed the states to impose a ten dollar fee on interstate carriers to renew their I.C.C. operating authority and a ten dollar per vehicle identification fee. Thus the district court opined that Congress intended a minimum of twenty dollars per carrier to be a permissible burden on interstate commerce. The district court reached its ruling by combining two federal regulatory schemes 49 C.F.R. § 1023, subpart B (§§ 1023.10 et. seq.) and 49 C.F.R. § 1023, subpart D (§§ 1023.30 et. seq.) This was in error.

Subpart B allows the state to require a carrier to register I.C.C. operating authority with the state. If the state chooses to require carriers to register, the regulation describes how registration must be completed. 49 C.F.R. § 1023.13 allows the state to charge a fee with the application for registration and provides in pertinent part:

[t]he application shall be accompanied by the fee, if any, prescribed by the law of such State: *Provided, however,* That such fee shall not exceed $25 ... *And provided further,* That such fee shall not exceed $10 for an application filed by a motor carrier who has previously filed a currently effective application for registration of ICC operating authority with such Commission. (Emphasis in original.)

The other regulatory scheme, 49 C.F.R. § 1023, subpart D, allows states to require carriers to apply for an identification stamp or identification number for each vehicle operated. 49 C.F.R. § 1023.31. 49 C.F.R. § 1023.33 allows the state to charge a fee with the application, and provides in pertinent part:

[t]he application shall ... be accompanied by the fee, if any, prescribed by law of such State; *provided, however,* that such fee shall not exceed $10 for the issuance of each such identification stamp; *and provided further,* ... that such fee shall not exceed $10 for each vehicle.... (Emphasis added.)

Through legislation and regulations Congress has limited the states' ability to regulate interstate carriers. *Castle v. Hayes Freight Lines,* 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68 (1954). 49 U.S.C. § 11506, 92 stat. 1448 (1978), Registration of Motor Carriers by the State provides, in pertinent part:

(a) In this section, "standards" and "amendments to standards" mean the specification of forms and procedures required by regulations of the Interstate Commerce Commission....

(b) The requirement of a State that a motor carrier, providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title and providing transportation in that State, register the certificate or permit issued to the carrier under section 10922 or 10923 of the title is not an unreasonable burden on transportation referred to in section 10521(a)(1) and (2) of this title when the registration is completed under the standards of the Commission under subsection (c) of the section. *When a State registration requirement imposes obligations in excess of the standards, the part in excess is an unreasonable burden....* (Emphasis added.)

49 U.S.C. § 11506 restricts Idaho's ability to regulate the registration of I.C.C. operating authority. Idaho may only impose registration requirements upon interstate carriers that are consistent with the regulations (standards) of the I.C.C., including applicable fee imposing regulations. The I.C.C. regulations plainly allow Idaho to charge interstate carriers only a maximum of ten dollars to renew registration and ten dollars for vehicle identification, per vehicle, *provided that state law allows for such a fee.* 49 C.F.R. §§ 1023.13, 1023.33.

Idaho did not have legislation in place to charge interstate carriers for vehicle identification. On the contrary, Idaho had only

adopted a twenty-five dollar fee for interstate carrier registration, with no distinction between renewal or new registration. Furthermore, I.C. § 61–812 contains a specific prohibition that the state is to charge the fees listed and *"no others."* I.C. § 61–812. Thus the IPUC could not charge a fee for vehicle identification because there had been no legislation adopted permitting it to do so. Idaho's twenty five dollar registration fee was patently in violation of federal law and regulations allowing for a maximum of a ten dollar registration renewal fee. Thus all carriers who paid the excessive twenty-five dollar fee were entitled to a fifteen dollar refund for each of the three years preceding the amendment to I.C. § 61–812.

## III.

### THE DRIVERS WERE NOT REQUIRED TO PAY THE FEE UNDER PROTEST IN ORDER TO BE ENTITLED TO A REFUND

■ The State argues, based upon the United States Supreme Court's holding in *McKesson v. Division of Alcoholic Beverages & Tobacco, Dept. of Business Regulations of Florida*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), that the carriers were required to pay the fee under protest in order to preserve their right to seek a refund. Because Idaho has no statute requiring the payment of I.C.C. operating fees under protest, the IPUC relies upon the language in *McKesson* to assert that under Idaho common law, taxes were required to be paid under protest. Therefore, according to the IPUC, the carriers are also required to pay their registration fee under protest to preserve their right to a refund. We agree that the State may enact a statute that procedurally requires taxpayers to make tax payments under protest in order to preserve their right to seek a refund. However, the policy behind requiring payment under protest is not consistent with and should not be applied to I.C.C. operating authority registration fees.

In this instance the district court determined that the IPUC was imposing the registration renewal fee upon the interstate carriers under the threat of criminal penalty (i.e.,

under duress); further, that the State did not provide meaningful pre-deprivation or post-deprivation due process to the carriers in order to challenge payment of the fee. Thus the drivers were entitled to a refund based upon the United States Supreme Court holding in *McKesson*, and were not required to pay the fees under protest to preserve their right to a refund. We agree with the district court's conclusion that the carriers were not required to pay the fees under protest, but we disagree with the district court's analysis of *McKesson*.

The United States Supreme Court in *McKesson* addressed a Florida taxing scheme that required the payment of a tax by out-of-state liquor distributors under duress. Similar to the fee imposed by Idaho, the State of Florida provided no pre-deprivation due process and would not provide a refund, although the tax was found to violate the United States Constitution. 496 U.S. at 18, 110 S.Ct. at 2238. The *McKesson* Court set forth the mandates of the Fourteenth Amendment Due Process Clause as it relates to a taxpayer's right to challenge tax burdens imposed by the states. *Id.* at 18, 110 S.Ct. at 2238. The Court held that taxpayers are entitled to either meaningful pre-deprivation due process in order to challenge the unlawful taxes that are required to be paid under duress (i.e., a hearing to challenge an unlawful tax paid under duress before it is paid) or the taxpayers must be allowed to challenge the taxes after deprivation and thus become entitled to a refund from the taxing body if the taxes are later found unlawful. *Id.* at 18, 110 S.Ct. at 2238.

In reaching the holding, the *McKesson* Court addressed an argument proffered by the State of Florida. The State asserted that if it were required to provide a refund for any taxes imposed that were found to be unlawful, its ability to insure its financial sovereignty and ability to plan for future budget needs would be drastically impaired. *Id.* at 18, 110 S.Ct. at 2238. In response, the Court set forth a list of procedural protection mechanisms which the states could impose, requiring the taxpayers to act before they would be entitled to a refund. *Id.* at 45, 110 S.Ct. at 2254. The Court specifically noted that a state could require, by statute, that taxpayers pay their tax under protest with-

out pre-deprivation due process to preserve their right to a refund if the tax were later found unlawful.[2] *Id.* at 45, 110 S.Ct. at 2254. The requirement of payment under protest was characterized as a procedural mechanism that could be used by the state so it would know how many taxpayers would be claiming a refund and the state could plan accordingly for refunds if the tax were later held unlawful.

In this instance, Idaho had no statute requiring the payment of I.C.C. registration renewal fees under protest to preserve the right to a refund. Although the tradition in Idaho is that a taxpayer must make a tax payment under protest in order to preserve the right to claim a refund, *see, e.g., Howell v. Board of Comm'rs of Ada County*, 6 Idaho 154, 53 P. 542 (1898), the policy behind requiring the payment of taxes under protest is not consistent with the purpose of the fee charged with the application for renewal of I.C.C. operating authority. The policy of requiring payment under protest is so that the state can protect its financial sovereignty. *McKesson*, 496 U.S. at 18, 110 S.Ct. at 2238. The state must know how much potential liability may be faced by taxpayers requesting refunds so it can budget accordingly. This is because taxes serve the purpose of providing funding for public services at large. *Alpert v. Boise Water Corp.*, 118 Idaho 136, 145, 795 P.2d 298, 307 (1990), (*quoting Brewster v. City of Pocatello*, 115 Idaho 502, 504, 768 P.2d 765, 767-68 (1988)).

Fees, on the other hand, serve only the purpose of covering the cost of the particular service provided by the state to the individual, not to the general public at large. *Id.* 118 Idaho at 145, 795 P.2d at 307. Here the service provided by the IPUC was the processing of the application for I.C.C. renewal of registration. By federal regulation this service could cost only ten dollars. The State has already incurred the cost of processing the application and presumably has collected enough money to cover the cost of

the service provided. In point of fact, it even collected an additional fifteen dollars per application over the last twenty years to which it was not entitled. The budgetary concerns of the state do not justify the requirement of payment under protest, as required by common law for taxes, especially in light of the fact that the State of Idaho has no legislation requiring the fees to be paid under protest.

## IV.

## THE DISTRICT COURT WAS CORRECT IN NOT AWARDING ATTORNEY FEES BECAUSE THERE WAS NO STATUTORY BASIS FOR SUCH AN AWARD

OOIDA asserts that the district court erred by not awarding it attorney fees based upon Idaho's fee shifting statutes: I.C. §§ 12-117; 12-120(3); 12-121; or the Idaho private attorney general doctrine. In addition, OOIDA asserts it was entitled to an award of attorney fees based upon federal civil rights legislation, 42 U.S.C. § 1988. We do not agree with either assertion.

■ Idaho is an "American rule" state requiring each party to bear their own attorney fees absent statutory authorization or contractual right. *Heller v. Cenarrusa*, 106 Idaho 571, 578, 682 P.2d 524, 531 (1984). The district court in this instance determined that OOIDA was not entitled to an award of attorney fees because there was no prevailing party. Based upon our holding in this case, the district court's determination of "prevailing party" may change on remand; however, an award of attorney fees would still not be permissible because there is no statutory basis for such an award under Idaho or federal law.

### A. I.C. § 12-117

■ I.C. § 12-117 does not form a basis for an award of attorney fees in this instance. I.C. § 12-117 allows for an award of attorney fees to persons who prevail against a "state agency." I.C. § 12-117 makes reference to

---

**2.** In addition to allowing the states to require by statute that the payment of taxes be under protest, the *McKesson* Court noted that the states could require that the taxpayers provide other timely notice of complaint; execute refunds on an installment basis; enforce relatively short statutes of limitation; refrain from collecting the

tax once it is declared invalid pending further review; or place the disputed tax in escrow pending review so the state can predict with greater accuracy the availability of undisputed treasury funds. *McKesson*, 496 U.S. at 45, 110 S.Ct. at 2254.

I.C. § 67–5201(1) for definition of a "state agency" which is subject to the attorney fee provision. I.C. § 67–5201(1) specifically excludes from the definition of "state agency" agencies of the legislative branch. The Idaho Public Utilities Commission is a legislative agency not falling within the definition of a "state agency" as defined by I.C. § 67–5201(1). *A.W. Brown Co., Inc. v. Idaho Power Co.*, 121 Idaho 812, 819, 828 P.2d 841, 848 (1992). Although OOIDA included the Department of Law Enforcement, the treasurer and the State itself in the complaint, the only party actually present before the district court and this Court is the IPUC. The IPUC is the agency responsible for the collection of I.C.C. registrations fees, and thus attorney fees are not available under I.C. § 12–117.

**B. I.C. § 12–120(3)**

■ I.C. § 12–120(3) does not form a basis for an award of attorney fees. I.C. § 12–120(3) allows for an award of attorney fees to the prevailing party in a "commercial transaction." "Commercial transaction" is defined by the statute as all transactions except those for personal or household purposes. I.C. § 12–120(3). While the parties' activities here may be characterized as "commercial" as opposed to personal or household, there is nothing in their dealings which may properly be characterized as a transaction. This was simply the act of a legislative agency collecting a fee for services, enabling the fee payor to conduct its business. Although the activity may have resulted in some commercial impact on the motor carriers, this circumstance would not bring it within the meaning of "commercial transaction" as used in I.C. § 12–120(3).

**C. I.C. § 12–121**

■ I.C. § 12–121 also does not form a basis for an award of attorney fees. I.C. § 12–121, as modified by Idaho Court Rule 54(e), allows the court to award fees to a prevailing party in certain limited circumstances. An award of attorney fees is not a matter of right and a court should only award fees pursuant to § 12–121 when it is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation. *Mi-*

*nich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The district court made no finding that the IPUC defended this action frivolously, unreasonably, or without foundation. There were difficult and complex constitutional issues presented below and on appeal and we find no justification for an award of fees on that basis.

**D. Private Attorney General Doctrine**

■ The private attorney general doctrine does not form a basis for an award of attorney fees in this case. The private attorney general doctrine was developed to allow for an award of attorney fees when an action meets three specific requirements: 1) great strength or societal importance of the public policy indicated by the litigation; 2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and 3) the number of people standing to benefit from the decision. *Heller*, 106 Idaho at 578, 682 P.2d at 531. In this instance OOIDA's action for refund of renewal fees is not of sufficient societal importance to justify an award of attorney fees. In addition, the number of people standing to benefit is also insufficient to justify an award of attorney fees.

**E. 42 U.S.C. § 1988**

■ An award of attorney fees in not warranted under 42 U.S.C. § 1988. The United States Supreme Court held that a party may pursue a cause of action under 42 U.S.C. § 1983 for a violation of a constitutional right under color of law for undue burdens placed upon interstate commerce in violation of the Commerce Clause. *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). The United States Supreme Court also held that the states and state officials acting in their official capacity are not "persons" subject to liability under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Arnzen v. State*, 123 Idaho 899, 854 P.2d 242 (1993).

In this instance the drivers filed suit against the Idaho Public Utilities Commission, the Department of Law Enforcement, the State Treasurer, and the State of Idaho. None of these parties are "persons" subject

to liability within the meaning of 42 U.S.C. § 1983; thus, OOIDA is not entitled to consideration of attorney fees under 42 U.S.C. § 1988.

## CONCLUSION

We hold that the district court erred by awarding only single-vehicle carriers five dollar refunds. All interstate carriers who paid the impermissible fee of twenty-five dollars for renewal of their registration of I.C.C. operating authority are entitled to a fifteen dollar refund for a period of three years. Finally, there is no statutory basis, either federal or state, for an award of attorney fees. Thus the district court's opinion is modified in part, affirmed in part and remanded for further action consistent with this opinion. No fees or costs shall be awarded to either party on appeal.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and HART, District Judge, Pro Tem., concur.