IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39909

| | | |
|---|---|---|
| IDAHO MILITARY HISTORICAL SOCIETY, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff-Counterdefendants-Respondent, | ) | Boise, December 2013 Term |
| | ) | |
| | ) | 2014 Opinion No. 57 |
| v. | ) | |
| | ) | Filed: June 17, 2014 |
| HOLBROOK MASLEN, an individual; | ) | |
| AEROPLANES OVER IDAHO, INC., an | ) | Stephen W. Kenyon, Clerk |
| Idaho corporation; | ) | |
| | ) | |
| Defendants-Counterclaimants-Appellants, | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOES I-V; and ABC CORPORATION I-V, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Appeal from the district court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

The district court's award of attorneys below to IMHS is <u>affirmed</u>. Costs on appeal are awarded to respondent.

Dinius & Associates, PLLC, Nampa, attorneys for appellants. Michaael J. Hanby II argued.

Runft & Steele Law Offices, Boise, attorneys for respondents. J. Kahle Becker argued.

_____

SCHROEDER, J. *pro tem*

## I.

### NATURE OF THE CASE

This is an appeal from the district court's order of attorney fees against the defendants, Aeroplanes Over Idaho ("AOI") and Holbrook Maslen ("Defendants"), in a dispute arising from the claim of lien filed by AOI on a PT-23 Fairchild airplane ("Fairchild") owned by the Idaho

Aviation Hall of Fame ("IAHOF") and transferred to the Idaho Military Historical Society ("IMHS"). Holbrook Maslen, the President of AOI, stored the Fairchild airplane owned by IAHOF for approximately nine months. IAHOF transferred title of the airplane to IMHS. The Defendants refused to surrender possession of the airplane and filed a claim of lien with the FAA seeking compensation for claimed storage and maintenance expenses they incurred on the airplane. IMHS filed suit against the Defendants who counterclaimed against IMHS. After a bench trial, the district court ordered the return of the airplane to IMHS and found that IMHS failed to establish damages on its claims. The district court also found that the Defendants failed to prove their counterclaims. The district court further ruled that AOI and Maslen were jointly liable for attorney fees in the amount of $73,675 under I.C. § 12-121 and I.R.C.P. 54(e)(1) because the Defendants' defense of this case was frivolous. Defendants appeal.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

The Idaho Aviation Hall of Fame is a non-profit organization created to establish an aviation museum. Holbrook Maslen was a member of the Board of Trustees of IAHOF. Since 2000, it was common practice for the minutes from Board meetings to be emailed to board members, including Maslen.

Steve Appleton donated a Fairchild PT-23 airplane to IAHOF in August of 1999. The airplane was in museum-quality condition. IAHOF began leasing indoor hangar space for the Fairchild at a cost of $3,000 per year in 2003. IAHOF maintained insurance on the airplane for static display, because it could not afford to insure it for flight.

At some point between 2003 and 2008, IAHOF fell behind on the lease payments on the hangar. Maslen volunteered his hangar space to store the Fairchild. He never indicated that there would be any bills for insurance, maintenance, or storage associated with his offer. On several occasions it was clear that he volunteered the hangar space for the Fairchild.[1] Maslen's offer to

---

[1] The minutes of the November 30, 2005, Board meeting, in which Maslen was present, reflect that "Maslen has generously offered to house the museum aircraft in his hangar in Caldwell, allowing us to release the hangar presently rented." The minutes of the February 22, 2006, Board meeting reflect that the Board President "thanked Holbrook Maslen for making available hangar space for our planes and artifacts that we had stored in the rented hangar in Caldwell." Again, during the March 21, 2006, meeting, "[t]he Board thanks [Maslen] for his generous support of the museum." IAHOF's budget for 2005–2006, which Maslen received, reflected no allocation of funds for hangar rental. Maslen was present at the March 29, 2007, meeting where the Board discussed their options with respect to the Fairchild. In August 2007, Maslen, in addition to several Board members, was appointed to a committee to study the feasibility of selling the Fairchild. It was the understanding of that committee, of which Maslen was a participant, that there was no charge to IAHOF for the storage of the Fairchild. The minutes of the

store the Fairchild was similar to an earlier offer he made in 2002 to store a Davis Wing aircraft for which he never requested compensation from IAHOF. It was IAHOF's understanding that permitting Maslen to store the Fairchild would benefit a display Maslen had at his hangar.

By 2007, IAHOF was unable to acquire the funds and ground at the Boise Airport for its museum and began debating what to do with the Fairchild. Maslen proposed a working relationship between IAHOF and Aeroplanes Over Idaho, an organization and museum of which Maslen was the President. IAHOF and AOI discussed a working partnership but never agreed to transfer ownership of the Fairchild to AOI. In IAHOF's June 2007 newsletter IAHOF made clear that the Fairchild was "on loan" to AOI. Maslen and several Board members were appointed to a committee to examine the feasibility of selling the Fairchild. By May 29, 2008, IAHOF agreed to donate the Fairchild to IMHS, which ran an active museum and had space that could potentially be used to display the aircraft. The donation of the Fairchild to IMHS was reflected in the IAHOF meeting minutes that were emailed to Maslen. Beginning July 31, 2008, IAHOF began attempts to transfer possession of the Fairchild from Maslen to IMHS, but Maslen was completely unresponsive and avoided IAHOF's communications.[2] It was not until February 2009, that IAHOF reached Maslen who hinted that he expected compensation. On March 23, 2009, IAHOF finally got in touch with Maslen who for the first time informed IAHOF that he expected compensation in the amount of $12,000 for the storage and maintenance of the Fairchild. AOI sent IMHS a letter dated March 25, 2009, maintaining that AOI understood that IAHOF did not have the funds to pay for storage of the Fairchild, but it was represented to AOI that the Fairchild would be given to AOI as compensation. In the event the Fairchild would not be given outright to AOI, AOI advised IMHS that it claimed a lien for $12,058 on the Fairchild.

September 27, 2007, Board meeting indicate that IAHOF was low on funds, but by that point in time Maslen had yet to make any request for payments. At the October 25, 2007, meeting, Maslen offered to cover the Fairchild's insurance on his own policy.

None of these meeting minutes indicate that Maslen made any mention that he expected to be compensated for storing the Fairchild. They clearly reflect that Maslen volunteered his hangar space for the Fairchild to support the IAHOF. Additionally, by Maslen storing the Fairchild, even without compensation, he was able to keep AOI's museum status valid. The IAHOF Board agreed to donate the Fairchild to IMHS on May 20, 2008; at this time Maslen had made no requests for payment and no indication that he expected compensation for storing the Fairchild.

[2] In September 25, 2008, an IAHOF Board member attempted to contact Maslen by telephone and left a message, but Maslen never got back to him. In November 2008, IAHOF made further attempts to contact Maslen, which were unsuccessful. Following the November 20, 2005, meeting, the Board secretary sent the meeting minutes to Maslen, attempted to call him again, but never received a call back. On March 16, 2009, IAHOF sent a certified letter to Maslen and tried to call him again, but did not get a response. On March 10, 2009, IAHOF's President sent a letter to Maslen by certified mail, which was returned as "unclaimed." On March 23, 2009, a letter by IAHOF was finally hand delivered to Maslen at Maslen's residence.

On August 8, 2008, AOI filed a Claim of Lien with the Federal Aviation Administration ("FAA lien"), demanding the sum of $12,025, for materials and labor furnished at the request of the IAHOF. The claim of lien was signed by Charles Vollman who purported to be the "maintenance specialist" of AOI. However, Vollman did not possess any legal authority to sign on behalf of AOI, was not familiar with the maintenance bills of the airplane, and was not paid by AOI. Rather, Vollman volunteered his labor to AOI. Vollman did testify that he and AOI thought they were going to get the Fairchild but were informed it was being sold to someone else. Vollman testified that there was no intention of charging any of the maintenance work on the Fairchild prior to learning that it was being sold to someone else, but because AOI was not going to get the Fairchild outright, it decided that they should make some charges against the aircraft and file a lien on it.

In April of 2009, Bill Miller of IMHS made an attempt to recover possession of the Fairchild. Title had been transferred to IMHS. Miller discovered that the Fairchild was not at AOI's hangar but some other hangar to which Miller had a key and permission to access. Miller was going to roll the airplane to another hangar, but a man named Paul Jemes arrived and asserted that he had an ownership interest in the Fairchild.[3] At that time Maslen and attorney Kevin Dinius arrived at the hangar and blocked the Fairchild in the hangar with Maslen's pickup truck. Miller informed Dinius that IMHS had been waiting for possession of the Fairchild and that the plane was not to be flown, because it was only insured for static display.[4] Much of the work that AOI performed on the Fairchild was not necessary since the plane was not to be flown.

On April 16, 2009, IMHS filed a Complaint for Claim and Delivery. The district court issued an Order to Show Cause on May 19, 2009. On May 26, 2009, AOI and Maslen filed a Response to the Order to Show Cause and requested a bond for the Fairchild pursuant to I.C. § 8-303. IMHS refused to post a bond in the amount requested by AOI. On August 5, 2009, IMHS filed its First Amended Complaint for Claim and Delivery. Defendants filed their Answer on August 28, 2009, and named IAHOF as a counter-defendant. IMHS and IAHOF moved for partial summary judgment on November 6, 2009. The district court denied the motions on the

---

[3] It is unclear from the record who Paul James is. Also, the district court found that Paul James had no evidence and no record of any claim or interest in the Fairchild.

[4] Despite the Fairchild not having been properly insured for flight, the Fairchild was flown while in the possession of AOI and Maslen. A director of IMHS noticed that there were stone chips and oil streaking on the column of the Fairchild in April of 2009. They also noticed insects on the front of the wings and the main landing gear, in addition to oil splashed on the cylinder. Maslen also admitted to flying the Fairchild twice after he took possession of it in February of 2006. Maslen flew the Fairchild at the Caldwell airshow and on some other occasion.

basis that there were issues of fact relating to the liens of defendant. IMHS filed several motions to compel discovery from the Defendants which were granted by the district court. Additionally, Defendants were sanctioned by the district court for their non-disclosure.

On May 10, 2010, IMHS filed a Second Amended Complaint asserting claims for claim and delivery, slander of title, quiet title, conversion, trespass to chattels, breach of fiduciary duties, and breach of contract. The Defendants answered asserting that AOI and IAHOF agreed on services to the Fairchild and AOI's damages for the services were $14,630. The Defendants filed a Motion for Summary Judgment, which admitted that IAHOF lawfully transferred title to IMHS. The parties stipulated to dismiss IAHOF from the lawsuit. IMHS made an offer of judgment pursuant to I.R.C.P. 68 in the amount of $300 on December 15, 2010. The district court denied the Defendants' motion for summary judgment on January 25, 2011.

A three day bench trial was held on March 14–16, 2011. The district court ordered AOI and Maslen to surrender possession of the Fairchild to IMHS. The district court found that Maslen and AOI's claim of lien was with reckless disregard for the truth or falsity of the charges therein. Subsequently, the district court clarified that the Plaintiff's claim for conversion was moot. Judgment was entered in favor of IMHS on August 9, 2011.

IMHS filed a Memorandum of Attorney's Fees and Costs, claiming it was entitled to attorney fees in the amount of $126,690, paralegal fees in the amount of $2,175, costs as a matter of right in the amount of $1,295, and discretionary costs in the amount of $2,843. The district court awarded IMHS $73,675 in attorney's fees pursuant to I.C. § 12-121 and I.R.C.P. 54(e)(1). An Amended Judgment was filed on January 10, 2011, which confirmed the award of attorney's fees and costs against Maslen and AOI. The Defendants moved for reconsideration or clarification. The district court denied the motion and confirmed its award of attorney fees. The Defendants appealed.

### III.

#### ISSUES ON APPEAL

1. Whether the district court erred when it found that IMHS was the prevailing party in this action.

2. Whether the trial court erred when it awarded IMHS attorney's fees and costs pursuant to I.C. § 12-121 and I.R.C.P. 54(e)(1).

**3.** Whether IMHS is entitled to attorney fees on appeal pursuant to I.C. § 12-121, I.A.R. 40, and I.A.R. 41.

## IV.

### STANDARD OF REVIEW

"A trial court's determination of whether a party prevailed is a matter of discretion." *Lettunich v. Lettunich*, 141 Idaho 425, 434–45, 111 P.3d 110, 119–20 (2005). An award of attorney fees pursuant to I.C. § 12-121 and I.R.C.P. 54(e)(1) will not be disturbed absent an abuse of discretion. *See Savage v. Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 250, 869 P.2d 554, 567 (1993). The district court's determination as to whether an action was brought or defended frivolously will not be disturbed absent an abuse of discretion. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1981).

When an exercise of discretion is involved, this Court conducts a three-step inquiry: (1) whether the trial court properly perceived the issue as one of discretion; (2) whether that court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by the exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Where an incomplete record is presented to an appellate court, missing portions of the record are presumed to support the action of the trial court." *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 744, 979 P.2d 605, 617 (1999).

## V.

### THE RECORD SUPPORTS THE DISTRICT COURT'S DETERMINATION THAT IMHS IS THE PREVAILING PARTY.

The district court found that IMHS was the prevailing party. It recognized that avoiding liability was a significant benefit to the Defendants, but it found that the primary issues of litigation arose from the dispute relating to possession of the Fairchild. That issue was resolved in IMHS's favor by finding that the Defendants acted with reckless disregard for the truth or falsity of the charges in the claim of lien. IMHS was the prevailing party.

The Defendants maintain that possession of the Fairchild was not the primary issue during litigation, and IMHS could have obtained possession of the airplane by posting a bond. They argue that IMHS failed on all of its claims except the quiet title claim, because it was unable to prove damages against the Defendants amounting to $796,218. Further, they argue that

although they failed on all three of their counterclaims, they succeeded on the majority of the claims, because they avoided damages on three of IMHS's claims.

IMHS responds that it litigated this case primarily for possession of the Fairchild airplane, which they were prevented from obtaining from Defendants without posting an exorbitant bond. IMHS obtained title to the airplane, which rendered one of its claims moot, and its other claims failed on its failure to prove the precise amount of special damages. IMHS also succeeded in defeating *every* counterclaim of Defendants.

Idaho Rule of Civil Procedure 54(d)(1)(B) guides a court's inquiry on the prevailing party question. *Shore v. Peterson*, 146 Idaho 903, 914, 204 P.3d 1114, 1125 (2009). Rule 54(d)(1)(B) provides as follows:

> In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

I.R.C.P. 54(d)(1)(B). The prevailing party question is examined "from an overall view [of the action], not a claim-by-claim analysis." *Shore*, 146 Idaho at 914, 204 P.3d at 1125. The district court's determination of who is a prevailing party will not be disturbed absent an abuse of discretion. *Trilogy Network Sys. v. Johnson*, 144 Idaho 844, 847, 172 P.2d 1119, 1122 (2007).

> When examining whether a trial court abused its discretion, this Court considers whether the trial court: (1) perceived the issue as one of discretion; (2) acted within the outer boundaries of this discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason.

*Shore*, 146 Idaho at 915, 204 P.3d at 1126. "Avoiding liability is a significant benefit to a defendant." *Eighteen Mile Ranch v. Nord Excavating & Paving*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005).

The district court did not abuse its discretion when it found IMHS the prevailing party in this action. While the Defendants were successful at avoiding a finding of damages, the district court found that this action was primarily precipitated by Defendants' refusal to surrender possession of the Fairchild airplane. IMHS's causes of action were brought against the Defendants because of their refusal to surrender possession of the Fairchild. IMHS attempted to

contact Maslen to arrange surrender of the aircraft to which they held proper title, but the Defendants wrongfully prevented IMHS from obtaining possession, requiring initiation of this action. Maslen asserts that IMHS could have obtained possession of the aircraft by posting a bond. That expense should not have been cast upon IMHS by the wrongful withholding of possession of the aircraft. No bond should have been sought. No lawsuit for possession should have been necessary.

The district court also did not abuse its discretion when it weighed the invalid lien placed on the Fairchild against the Defendants in determining that IMHS was the prevailing party. A significant portion of the action was committed to disposing of the FAA lien that the Defendants placed on the Fairchild. The district court found that the lien failed to satisfy the requirements of statute. The district court also found that the reason this lien was filed was because Maslen thought that he was going to gain possession of the Fairchild. When that failed, he thought he was owed something. IMHS succeeded in defeating the FAA lien placed on the Fairchild, which was a significant element of the action.

Additionally, the Defendants alleged three counterclaims against IMHS. IMHS defeated all three of these counterclaims. An overall view of the litigation indicates that IMHS's primary objective in this action was to obtain possession of the Fairchild and to defeat the lien on the airplane. The Defendants sought to exact money from IMHS to which the Defendants were not entitled. IMHS prevailed on obtaining possession of the Fairchild, invalidating the lien on the aircraft, and avoiding paying Defendants anything. Evaluating the action as a whole indicates that the district court did not abuse its discretion when it found IMHS to be the prevailing party.

## VI.

### THE DISTRICT COURT DID NOT ERR IN AWARDING ATTORNEY FEES TO IMHS.

The district court awarded IMHS attorney fees as the prevailing party pursuant to I.C. § 12-121 and I.R.C.P. 54(e)(1), based on a determination that the Defendants' claims were frivolous, unreasonable, and without foundation. The Defendants' claim of lien was without foundation, because there was no evidence that Defendants were entitled to compensation. The claim of unjust enrichment was without merit because the evidence demonstrated that AOI did not expect payment.

The Defendants argue that the case was not defended frivolously on the basis that they avoided $796,218 in damages claimed by IMHS. They maintain that their counterclaims cannot

be characterized as frivolous, because their claim for unjust enrichment was not predicated on the assertion of the lien. They assert that IMHS benefited from the storage of the Fairchild through the trial and that IMHS failed to take any effort to take possession of the Fairchild prior to the end of trial.

IMHS responds that the district court properly awarded attorney fees because the Defendants acted with reckless disregard with respect to their FAA lien on the Fairchild and their unjust enrichment claim was without merit because their arrangement with IAHOF was a gratuitous bailment. Further, there was no question of triable fact with regard to IMHS receiving a benefit from AOI's storage of the Fairchild, because such benefit was necessarily expected by Defendants in their gratuitous bailment.

> This Court has held that an award of attorney fees under I.C. § 12-121 is not a matter of right, and is appropriate only when the Court, in its discretion, is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation. When deciding whether the case was brought or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account. Thus, if there is a legitimate, triable issue of fact, attorney fees may not be awarded under I.C. § 12-121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation. The award of attorney fees rests in the sound discretion of the trial court and the burden is on the person disputing the award to show an abuse of discretion. In determining whether the trial court has abused its discretion, we again turn to the three-factor test articulated in *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho at 94, 803 P.2d at 1000.

*Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 524–25, 20 P.2d 702, 708–09 (2001) (internal citations and quotation omitted) (hereinafter "*Nampa Meridian*").

IMHS argues that the use of "may not" in *Nampa Meridian* is permissive and grants a court discretion to either award or not award attorney fees if a legitimate, triable issue of fact is presented. That is not the thrust of this Court's opinions. The standard articulated in *Nampa Meridian* is that attorney fees will not be awarded pursuant to I.C. § 12-121 if there is a "legitimate triable issue of fact." It is clear that the district court was aware of the standard, citing to the applicable civil rules and quoting *Nampa Meridian*. The district court concluded that, "After full consideration, this court does conclude that Defendants' claims were frivolous, unreasonable, and/or without foundation."

The ruling in the district court raises the question of continued adherence to the strict limitation articulated in *Nampa Meridian* that attorney fees will not be assessed if there is "a

legitimate, triable issue of fact" even though a party has asserted claims that are frivolous, unreasonable, or without foundation. This Court invited additional briefing by the parties on the question of whether the Court should adhere to the language in *Nampa Meridian*. That briefing has been received and reviewed.

Writing around the fact that the Defendants successfully defended against some claims by the Plaintiff to sustain the district court ruling is not appropriate. In effect, the district court apportioned attorney fees, awarding fees for the frivolous, unreasonable, and foundationless claims by the Defendants that created the need for the lawsuit. The district court's result has precedent in *O'Boskey v. First Fed. Savings & Loan Association of Boise*, 112 Idaho 1002, 1008–10, 739 P.2d 301, 307–08 (1987), in which the district court awarded fees for those portions of the defense that were frivolous but disallowed fees for the portions of the defense that were not frivolous. The Supreme Court affirmed the award. The standard subsequently articulated in *Nampa Meridian* did not mention *O'Boskey*, which assumed without discussion that the district court could parse out those areas of unreasonableness and those in which a party's conduct was reasonable. Consequently, its precedential value passed into history without recognition or discussion. Unfortunately, the standard articulated in *Nampa Meridian* can lead to the result that a party who makes claims or defenses that are clearly frivolous, unreasonable, or without foundation may avoid the consequences of that conduct and cast the burden of attorney fees on the other party, even if the overall view of the case establishes the unreasonableness of the conduct requiring the lawsuit. Arguably, a single, triable issue of fact may excuse a party from the aggregate of misconduct that necessitates or dominates the conduct of the lawsuit. This Court does back away from and clarify the overly strict application of Idaho Code section 12-121 set forth in *Nampa Meridian*. Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation. Apportionment of costs and fees is common even for district courts, and this step back from the language of *Nampa Meridian* is consistent with the general principles of apportioning costs and fees.

The record in this case is clear that litigation to obtain possession of the aircraft should never have been necessary. The litigation was necessitated by factual claims that were indefensible. The Plaintiff asserted some legal theories it could not prove. Those assertions were in response to factual claims by the Defendants that were unsupportable and which were known by the Defendants to be unsupportable. The Defendants had no legitimate triable claims of fact

on the question that necessitated the initiation of this action. The district court did not abuse its discretion in awarding the attorney fees for the claims of the Defendants necessitating this lawsuit that were frivolous, unreasonable, and without adequate foundation.

## VII.

### IMHS IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL.

IMHS requests attorney fees and costs on appeal pursuant to I.C. § 12-121, I.A.R. 40, and I.A.R. 41. The Court will award fees to a prevailing party in some circumstances as authorized by Idaho Code section 12-121. *Owner-Operator Indep. Drivers Assn v. Idaho Pub. Utils. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994). But attorney fees are not awardable as a matter of right. *Id.* They should only be awarded when the court believes "that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Id.* Attorney fees will not be awarded for arguments that are based on a good faith legal argument. *E.g., Backman v. Lawrence*, 147 Idaho 390, 401, 210 P.3d 75, 86 (2009).

IMHS is not entitled to attorney fees on appeal. The Defendants raised good faith legal arguments with respect to whether IMHS was the prevailing party. Further, the reliance on *Nampa Meridian* in opposing the award of attorney fees was reasonable. The appeal was not frivolous, unreasonable, or without foundation.

## VI. CONCLUSION

The district court's award of attorney fees below to IMHS is affirmed. Costs on appeal are awarded to the Respondent. Neither party is entitled to attorney fees on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.